In the Matter of Adrian Michaelson, an Attorney, Respondent. Association of the Bar of the City of New York, Petitioner.

First Department, June 9, 1944.

*Einar Chrystie* for petitioner.

*Henry S. Michaelson* for respondent.

*Per Curiam.* An Official Referee has reported that charges of professional misconduct set forth in the petition have been fully established.

The respondent was admitted to practice in this State in 1932 and to practice in New Jersey in 1938. He was retained in New Jersey by one Anna Banks, a resident of that State, to prosecute an action for damages by reason of personal injuries sustained by her. The retainer agreement provided that the respondent was to receive one half of any sum received by settlement or otherwise. The respondent settled the claim of Mrs. Banks with an insurance company representing the owner of the property on which she was injured, for the sum of $250. The respondent paid Mrs. Banks but $60. Thereafter an investigation of the entire settlement was made and the respondent sought to justify that payment by contending that he paid a Dr. Sigman the sum of $50 for medical services rendered to Mrs. Banks and that he paid another doctor $15 for X-rays of

Mrs. Banks. These two payment totaled $65 which added to the $60 paid Mrs. Banks made up her one half of the settlement of $250.

The charges, which grow out of the foregoing settlement and payment of but $60 to Mrs. Banks, are summarized in the petition in the following language: " It is charged that the respondent conspired with Dr. George Sigman to present falsified and fictitious statements of services rendered by the said doctor in obtaining the settlement in the Banks case; that after obtaining the proceeds of the settlement, the respondent in disbursing the settlement funds so distributed the sum received as to deprive his client of money rightfully due to her under the settlement and converted a portion of the same to his own use; and that the respondent testified falsely while under oath at the hearings held before the Committee on Ethics, Grievances and Prosecutions of the Hudson County Bar Association regarding material incidents in the case."

The evidence in the record before this court discloses that Mrs. Banks, at the suggestion of the respondent, called upon a Dr. Sigman. She made but one visit. Thereafter, when the respondent was attempting to settle the claim, he requested Dr. Sigman to furnish him with a statement of the visits and services rendered to Mrs. Banks and a report of her physical condition as disclosed on Dr. Sigman's examination. Despite Dr. Sigman's statement to respondent that Mrs. Banks had called at his office on but one occasion, the respondent induced the doctor to prepare and render a statement, dated May 17, 1941, indicating that Mrs. Banks made ten visits to the doctor between March 24, 1941, and April 19, 1941, and that on nine of these occasions the doctor treated her by applying " Diathermy to chest." A charge of thirty dollars was set forth for the services listed on the above statement. Dr. Sigman testified that he furnished the respondent with this statement on the latter's representation that it was required for use in the settlement of Mrs. Banks' case with the insurance company. Some time thereafter the respondent informed Dr. Sigman that in the pending negotiations to settle the claim he required a further statement showing additional treatments. Pursuant to such request Dr. Sigman furnished a second statement to the respondent captioned " Additional Treatment." That statement showed Mrs. Banks called on Dr. Sigman eight times between May 6, 1941, and June 3, 1941, on each of which occasions diathermy treatments were administered.

The respondent later induced Dr. Sigman to give him another statement in writing setting forth that Dr. Sigman had

" Received $50.00 for treatment of Mrs. Anna Banks." Dr. Sigman testified that he gave that statement under the following circumstances: " Mr. Michaelson had met me one time a few days before this had happened, that would be July 18, down Journal Square and he said that at that time he was having a little trouble with Mrs. Banks or that the settlement of the case was not exactly correct and a day or two after he had met me he came over to the office and he actually pleaded with me and he said, you have to give me a receipt for Fifty Dollars because I am in a lot of hot water, but dated back, and like a damn fool I wrote this out to him. Q. Did you give it to him? A. Yes."

At that time the conduct of the respondent in settling Mrs. Banks' case was under investigation. Later in 1941 two hearings were held by the Committee on Ethics, Grievances and Prosecutions of the Hudson County (New Jersey) Bar Association. At the first hearing held on November 26, 1941, the respondent testified, under oath, that he had paid Dr. Sigman fifty dollars in cash for his services to Mrs. Banks. His testimony is as follows: " Q. How did you pay that? A. By cash. Q. Why? A. I happened to be down there. I happened to be across the street at the time visiting Dr. Schneider who happens to be in our family and he at that time was looking around for rooms there. I went down with him, and I went across the street to Dr. Sigman with him and I paid him the cash and got a receipt for it at that particular time."

The attorney for the respondent on the hearings before the Committee then offered in evidence the receipt for $50 referred to above in the testimony of Dr. Sigman, and which receipt was given by the doctor because the respondent was " in a lot of hot water."

At a subsequent meeting of the Committee of the Hudson County Bar Association, the respondent admitted that he paid the doctor but $20 and retained $30. He also testified that the doctor's bill of $50 was submitted to the insurance company in connection with the settlement of the case. As a result of that investigation, the respondent was suspended by the New Jersey Supreme Court from the practice of the law in that State for a period of two years from May 18, 1942.

The respondent has admitted substantially all the charges against him. In his brief submitted to this court on this motion to confirm the report of the Official Referee, the respondent expressly admitted that he had suggested to Dr. Sigman that the latter give a statement containing an exaggerated number of medical treatments; that he had overcharged his client; that he had testified falsely at the hearing before the Hudson County

Bar Association. The respondent then claimed that there were mitigating circumstances. None were shown.

This respondent is completely lacking in common honesty or a proper understanding of the ethics of the legal profession. This is apparent from a statement dated July 21, 1942, which the respondent submitted to the petitioner in attempted explanation of his conduct prior to the commencement of this proceeding. This statement is captioned "Answer to charges of Professional Misconduct." After admitting therein that he had told Mrs. Banks that the bill for Dr. Sigman's services was $50, he stated: "I paid Dr. Sigman the sum of $20.00 and retained the sum of $30.00 for myself. Dr. Sigman had given me a bill of $50.00. * * * I did know, however, that the bill was padded to the extent that eight additional visits were placed on the bill. This I understand is not such a breach of professional ethics that it calls for severe punishment. Insurance companies take into consideration when a settlement is made that a bill might be padded somewhat. * * *."

In the same statement to the petitioner the respondent admitted that he had testified falsely before the Committee of the Hudson County Bar Association. In attempted justification of such wrongdoing he stated that he thought of covering up this perjury because it might lead to his disbarment. His statement reads: "As to the next main issue, the false testifying, all I can say is that when I was called by the chairman of the committee, I became confused and panicky and immediately thought of covering up the situation. I can see now that if the truth were told at that time that the committee would have been lenient. I at first thought that the act was so serious that it might lead to disbarment. I have no defense to this issue."

In addition thereto, the respondent stated in his verified answer to the petition in this proceeding that he " concedes that there is basis for some of the accusations of the petition but respectfully submits that stress of business overzealous efforts and the methods of adjustors of liability claims necessarily brings attorneys perilously close to a nebulous dividing line which the attorney too often must decide at his own peril."

The Official Referee has found that the charges have been established by the evidence. That finding is fully supported by the record.

The respondent has converted to his own use moneys which should have been paid to his client; he induced a member of the medical profession to submit false bills and statements for the purpose of obtaining a better settlement of a claim; he committed perjury in an attempt to explain his improper conduct.

In addition, the statement submitted in attempted explanation of his misconduct and his verified answer to the petition herein disclose a woeful lack of appreciation of the proper conduct of a member of the Bar.

The respondent should be disbarred.

MARTIN, P. J., TOWNLEY, GLENNON, DORE and COHN, JJ., concur.

Respondent disbarred.